IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY ADAMS, et al., | No. CIV S-04-0979-RRB-CMK |
|     Plaintiffs, | |
|   vs. | FINDINGS AND RECOMMENDATIONS |
| UNITED STATES OF AMERICA, et al., | |
|     Defendants. | |
|                                / | |

Pending before the court are separate motions for default judgment (Docs. 173, 179, and 180) filed by plaintiffs Ohm Ranch, Charles T. Ohm, Barbara A Ohm, John C. Ohm, and Susan L. Ohm ("Ohm plaintiffs"), Melvin Thompson and Mary Thompson ("Thompson plaintiffs"), and Douglas Hammond and Rhonda Hammond ("Hammond plaintiffs"), against defendant Donna Gordy. These motions are before the undersigned pursuant to Eastern District of California Local Rule 72-302(c)(19).

/ / /

/ / /

/ / /

## I. BACKGROUND

Plaintiffs' action proceeds on the amended complaint (Doc. 14) filed on September 3, 2004. Plaintiffs assert civil rights claims against defendant Gordy, who at the times relevant to this action was a Credit Manager at the Farm Service Agency of the United States Department of Agriculture, pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971). Plaintiffs' claims are based on an alleged pattern of fraud, misrepresentation, failure to act, failure to follow published regulations, and breach of fiduciary duty, all done in defendant's capacity as a federal employee. Defendant Gordy was personally served on October 14, 2004 (<u>see</u> Doc. 19). After defendant Gordy failed to respond to the amended complaint, plaintiffs requested entry of default by the Clerk of the Court on December 27, 2004 (Docs. 21 and 22). The Clerk of the Court entered defendant Gordy's default on the same day (Doc. 23).

The Ohm plaintiffs filed their motion for default judgment on February 15, 2008. After reviewing the motion, the court issued an order on June 16, 2008, directing the Ohm plaintiffs to either submit supplemental declarations in support of their motion or set the matter for a hearing (<u>see</u> Doc. 176). In that order, the court noted that the Ohm plaintiffs sought default judgment in the amount of $714,628.04, but concluded that the proper measure of damages could not be assessed without further information. Specifically, the court stated:

> In the present case, the court has reviewed and considered the Ohms' Amended Complaint (Doc. 14); Ohm Judgment (Doc. 155) and the declarations of John Ohm (Doc. 173.4) and Julie Sutterfield (Doc 173.5). Since the Amended Complaint offers little specificity as to the borrower/lender relationship between the Ohms and Defendant Farm Service Agency ("FSA") and how the Ohms have been damaged by the acts of Gordy, the court has also considered the declaration of Nels Christiansen (Doc. 128) in support of FSA's Motion for Summary Judgment (Doc. 126) which sets forth the long and rather complex loan history of the Ohms with FSA.
>
> * * *
>
> In the declaration of Julie Sutterfield (Doc 173.5), damages appear to be based on the difference between the actual Ohm obligation to FSA, including attorneys' fees, and what they would have been obligated to FSA had their loans been properly restructured by Gordy at lower

interests rates. Since many of the FSA loans appear to have been subject to lending ceilings, the court is unsure whether Sutterfield's simple math will suffice. For example, loans having an interest rate of 3.75% may have had a ceiling of $400,000.00, and loans having an interest rate of 5.00% interest may have had a ceiling of $200,000.00. See, paragraphs 26 through 44 of the Christainsen Declaration (Doc. 128). How does Sutterfield's expertise as an IRS agent equate to an understanding of FSA lending policies? If Plaintiffs' damages are to be based upon Sutterfield's computations, a better understanding of prefix 29 and 44 FSA loans, and a more detailed accounting of damages would appear to be necessary.

The Ohms also request that damages against Gordy include the amount of stipulated attorneys' fees that they are required to pay to FSA (Doc 155) under the stipulated judgment. Does this require the court to assume that, but for Gordy's conduct, the Ohms' loans would not have been in default and the subject of future litigation by FSA? The Ohms' loans appear to have been in default several years before Gordy became involved with their portfolio. (Doc 128).

This is not to say that the Ohms are not entitled to damages from Gordy. The court is simply left without sufficient information to make an appropriate award in the absence of receiving supplemental information.

In response to the court's order, the Ohm plaintiffs submitted supplemental declarations by Julie Sutterfield (Doc. 178) and plaintiff John Ohm (Doc. 177).[1] With these declarations, the Thompson plaintiffs and Hammond plaintiffs filed their separate motions for default judgment.

## II.  STANDARDS FOR DEFAULT JUDGMENT

Whether to grant or deny default judgment is within the discretion of the court. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court considers the following factors: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits when reasonably possible. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir 1986). Regarding the last factor, a decisions on the merits is impractical, if not

---

[1] The captions appear to indicate that these declarations were submitted in support of the Ohm plaintiffs' motion only.

impossible, where defendants refuse to defend.  See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Where a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true.  See Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam); Danning v. Lavine, 572 F.2d 1386 (9th Cir. 1978); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam); see also Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001).  Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact.  See Panning v. Lavine, 572 F.2d 1386 (9th Cir. 1978).  However, the court has the responsibility of determining whether the facts alleged in the complaint state a claim which can support the judgment.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  For this reason, the district court does not abuse its discretion in denying default judgment where the factual allegations as to liability lack merit.  See Aldabe, 616 F.2d at 1092-93.

While factual allegations concerning liability are deemed admitted upon a defendant's default, the court does not presume that any factual allegations relating to the amount of damages suffered are true.  See Geddes, 559 F.2d at 560.  The court must ensure that the amount of damages awarded is reasonable and demonstrated by the evidence.  See id.  In discharging its responsibilities, the court may conduct such hearings and make such orders as it deems necessary.  See Fed. R. Civ. P. 55(b)(2).  In assessing damages, the court must review the facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled.  See Pope v. United States, 323 U.S. 1 (1944).

Where actual damages are not proved, it may be appropriate in some cases to award nominal damages to vindicate the deprivation of certain "absolute" rights.  See Cummings v. Connell, 402 F.3d 936, 942 (9th Cir. 2005).  Nominal damages may be appropriate under California law for the torts of trespass, see Consterisan v. Tejon Ranch Co., 255 Cal.App.2d 57,

60 (5th Dist. 1967), assault, see <u>Liljefelt v. Blum</u>, 33 Cal.App.721 (1st Dist. 1917) (per curiam), loss of publicity, see <u>Ericson v. Playgirl, Inc.</u>, 73 Cal.App.3d 850, 859 (2nd Dist. 1977), as well as breach of contract, see <u>id.</u>.  As the term implies, nominal damages is defined as a mere token or trifle.  See <u>Cummings</u>, 402 F.3d at 943.

### III.  DISCUSSION

A.  <u>**Ohm Plaintiffs**</u>

The declarations submitted in support of the Ohm plaintiffs' motion for default judgment claim damages as follows:

| | |
|---|---:|
| Liability for civil rights violation | $285,290.47 |
| Prejudgment interest | $96,891.55 |
| Attorneys fees and costs | $96,306.89 |
| Stipulated attorneys fees | $236,139.13 |
| TOTAL | $714,628.04 |

In the prior order, the court questioned two categories of alleged damages:  (1) those based on defendant Gordy's conduct; and (2) those based on stipulated attorneys fees.  As to damages resulting from defendant Gordy's liability for civil rights violations, the court's prior order noted that ". . .damages appear to be based on the difference between the actual Ohm obligation to FSA . . . and what they would have been obligated to FSA had their loans been properly restructured by Gordy at lower interests rates."  The court questioned whether the amount listed, as calculated by Ms. Sutterfield, reflects FSA lending ceilings.  As to stipulated attorneys fees, the court questioned whether this amount was appropriate given that the Ohm plaintiffs' loans appear to have been in default several years before defendant Gordy's involvement.

In her supplemental declaration, Ms. Sutterfield does not offer any information not provided in her earlier declaration.  Specifically, she continues to state that her calculation of the amount of damages arising from defendant Gordy's conduct is "based upon the interest rate differential of two FSA loans:  loans 29-12 and loan 44-13" and that "[b]oth loans have accrued

interest at 8.25% per annum, rather than at 3.75% (loan 29-12) and 5% (loan 44-13). . . ." Ms. Sutterfield does not address whether or how loan ceilings affect her calculations.  Plaintiff John Ohm's declaration also does not address this issue.

Evidence submitted in support of an earlier motion for summary judgment in this case indicates that loan 44-13 was originally designated loan 44-08 and later written off by FSA in the amount of $25,220.25, at which time loan 44-08 became loan 44-13 for tracking purposes. (see Doc. 129, p. 6).  Loan 44-08 was based on an assumption agreement executed by plaintiffs John Ohm and Susan Ohm whereby they assumed the obligation to repay note in the principal amount of $19,000.00 with interest accruing at 10.25% per annum.  (see id. at pp. 4-5).  While the principal amount underlying loan 44-13 thus appears to be below any loan ceilings, Ms. Sutterfield's declarations indicate that this loan was subject to an interest rate of 8.24% whereas other evidence of record indicates an interest rate of 10.25%.  Neither Ms. Sutterfield nor plaintiff John Ohm offer any explanation in their declarations for this apparent discrepancy.

With respect to loan 29-12, the court is unable to find any reference to the details of this loan in any earlier evidence or in the Ohm plaintiffs' instant motion and supplemental declarations.  In particular, the Ohm plaintiffs have failed to address the court's concerns, as outlined in the June 16, 2008, order, regarding loan ceilings.

Turning to damages based on stipulated attorneys fees, the Ohm plaintiffs' supplemental submissions do not address the court's concerns at all.  It is fair to assume from this silence that the Ohm plaintiffs cannot establish that, but for defendant Gordy's conduct, they would not have been liable for attorneys fees incident to the judgment against them.

For the reasons discussed above, the court concludes that the Ohm plaintiffs have not established with the degree of certainty required for a default judgment that Ms. Sutterfield's calculation of damages arising from Defendant Gordy's conduct is accurate.  In addition, the Ohm plaintiff's appear to be unable to establish the causal connection required to recover stipulated attorneys fees by way of a default judgment against defendant Gordy.  Because the

Ohm plaintiffs cannot establish a measure of damages based on defendant Gordy's liability, they are not entitled to prejudgment interest or attorneys fees and costs. Therefore, the court finds that the Ohm plaintiffs should not be awarded a default judgment against defendant Gordy.

### B.    Thompson Plaintiffs and Hammond Plaintiffs

The Thompson plaintiffs seek a default judgment in the total amount of $208,822.13. This amount represents prejudgment interest in the amount of $38,612.05 and damages arising from defendant Gordy's conduct.[2] In their motion, the Thompson plaintiffs state that "[t]he amount of compensatory damages is established by the Declaration of Katherine York." No such declaration, however, was submitted with the motion for default judgment.

The Hammond plaintiffs' motion is as cursory as those by the other plaintiffs. For example, as with the Thompson plaintiffs' motion, the Hammond plaintiffs state that the amount of "compensatory damages" is supported by a declaration which was not submitted with their motion.[3]

The court finds that neither the Thompson plaintiffs nor the Hammond plaintiffs have established an adequate measure of damages by way of default judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2]   The Thompson plaintiffs' motion does not indicate the amount of damages arising from defendant Gordy's conduct. Moreover, while the motion does not mention stipulated attorneys fees or other attorneys fees, the declaration submitted by counsel in support of the motion references both in the total amount of $61,309.20. The court presumes the unspecified amount sought based on defendant Gordy's conduct to be the total amount sought less prejudgment interest, stipulated attorneys fees, and other attorneys fees – $108,900.88.

[3]   The Hammond plaintiffs refer to the declaration of Brian Russell.

7

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. The Ohm plaintiffs' motion for default judgment (Doc. 173) be denied;

2. The Thompson plaintiffs' motion for default judgment (Doc. 179) be denied; and

3. The Hammond plaintiffs' motion for default judgment (Doc. 180) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 6, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE