**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ANDY ADAMS, et al.,

Plaintiffs,

vs.

UNITED STATES OF AMERICA, et al.,

Defendants.

_______________________________/

No. CIV S-04-0979-RRB-CMK

ORDER

Pending before the court are defendant Gordy's motions to set aside default (Doc. 183) and to expunge lis pendens (Doc. 185). Plaintiffs' renewed motion for default judgment (Doc. 187) will be addressed separately. Plaintiffs have filed oppositions to defendant Gordy's motions, but defendant Gordy has not filed replies in support of her motions. The plaintiffs are Ohm Ranch, Charles T. Ohm, Barbara A Ohm, John C. Ohm, and Susan L. Ohm ("Ohm plaintiffs"), Melvin Thompson and Mary Thompson ("Thompson plaintiffs"), and Douglas Hammond and Rhonda Hammond ("Hammond plaintiffs"). These motions are before the undersigned pursuant to the provisions of Eastern District of California Local Rule 72-302(c).

/ / /

## I. PROCEDURAL HISTORY

Plaintiffs' action proceeds on the amended complaint (Doc. 14) filed on September 3, 2004. Plaintiffs assert civil rights claims against defendant Gordy, who at the times relevant to this action was a Credit Manager at the Farm Service Agency of the United States Department of Agriculture, pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Plaintiffs' claims are based on an alleged pattern of fraud, misrepresentation, failure to act, failure to follow published regulations, and breach of fiduciary duty, all done in defendant's capacity as a federal employee. Defendant Gordy was personally served on October 14, 2004 (see Doc. 19). After defendant Gordy failed to respond to the amended complaint, plaintiffs requested entry of default by the Clerk of the Court on December 27, 2004 (Docs. 21 and 22). The Clerk of the Court entered defendant Gordy's default on the same day (Doc. 23). Defendant Gordy first appeared in the action by way of her motion to set aside entry of default one month later. Other than plaintiffs' claims against defendant Gordy, all other issues in this litigation have been concluded to final judgment.

## II. DISCUSSION

### A. Defendant Gordy's Motion to Set Aside Default

Under Rule 55(c), the court may set aside entry of default by the Clerk of the Court for good cause shown. The moving party must meet three requirements in order to prevail: (1) the defendant's culpable conduct did not lead to the default; (2) defendant has a meritorious defense; and (3) setting aside default will not prejudice the plaintiff. See O'Connor v. State of Nevada, 27 F.3d 357, 364 (9th Cir. 1994); see e.g. TCI Group Life Insurance Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001) (discussing factors in context of motion to set aside default judgment); see also e.g. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988) (stating that a default judgment will not be set aside if any one of these requirements is not met). The factors under Rule 55(c) and Rule 60(b) are the same. See id. The court's

discretion, however, is particularly broad in the context of a motion to set aside entry of default, as opposed to a motion to set aside default judgment. See O'Connor, 27 F.3d at 364.

As to the first factor, a defendant is culpable if she had actual or constructive notice of an action but willfully failed to file a response in an effort to hinder the proceedings. See TCI Group, 244 F.2d at 697. As to the second factor, the Ninth Circuit has stated that default judgments are disfavored. See id. at 693. Additionally, the defaulting party must present specific facts and law showing a meritorious defense to the claims. See id. at 700. A mere general denial without facts to support it is insufficient. See Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969); see also In re Stone, 588 F.2d 1316, 1319 n.2 (10th Cir. 1978). As to the third factor, prejudice to the plaintiff means more than delay in resolution of the case. See TCI Group, 244 F.3d at 701. Generalized assertions that delay will result in loss of evidence are also insufficient to establish the requisite prejudice. See Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000).

The three factors are disjunctive. In other words, if culpable conduct is shown, it is not necessary to consider the remaining factors. See Alan Neuman Productions, 862 F.2d at 1392. Similarly, if there is no meritorious defense, "then nothing but pointless delay can result from [setting aside the default]." TCI Group, 244 F.3d at 696. And, if setting aside the default would result in actual prejudice to the plaintiff, "the interest in finality should prevail." Id. Thus, while the defaulting defendant must establish all three factors in her favor, the plaintiff need only prevail on any one factor.

In this case, defendant Gordy argues that she was under a "mental disability prior to and including the time of filing of the entry of default" which rendered her "incapable of understanding" that a default had been entered against her. She asserts that on this basis alone she should be permitted to appear by way of an answer and defend on the merits "instead of allowing Plaintiffs to benefit from GORDY'S disability." Defendant Gordy also argues that she has a meritorious defense and that plaintiffs would not be prejudiced if default was set aside.

1. Defendant Gordy's Conduct Leading to Entry of Default

Defendant Gordy argues:

> In the case at hand GORDY has not acted in a culpable manner. In fact, GORDY has failed to respond to the lawsuit against her solely because of mental illness – a factor beyond her control. GORDY at no time has failed to respond to the suit to benefit her own well being or to cause harm to opposing parties. GORDY'S failure to respond has been a direct result of the debilitating symptoms of her mental illness, which can be attributed to the stressful employment conditions she endured while working for the federal government.
>
> During her employment with the federal government GORDY dealt with severe and chronic under-staffing during a period of an unusually high volume of loan applications. GORDY'S pre-existing mental illness, documented since 1980, reached its peak in 2004 when she suffered a severe break in her mental illness which led to the appearance of multiple personalities. . . . This emergence of new personalities was most likely brought on by the stressful conditions of her federal employment rendering GORDY unable to appreciate the necessity to respond and defend herself in this action.

In support of her motion, defendant Gordy submits the declaration of her treating physician, Deborah A. Sutcliffe, M.D. Dr. Sutcliffe is not a psychiatrist or psychologist. In her declaration, Dr. Sutcliffe states:

1. She has been defendant Gordy's treating physician since 1993;
2. Defendant Gordy has been diagnosed with depression, anxiety, chronic pelvic pain, high blood pressure, and musculoskeletal problems of the neck, shoulder, and upper extremities;
3. In 1994 defendant Gordy's pelvic pain and depression worsened and she experienced thoughts of suicide and mutilation;
4. Defendant Gordy was "thereafter" referred to a psychologist;
5. By 1996 defendant Gordy was still attending psychotherapy but her mental health deteriorated further;
6. By 1998 defendant Gordy's "health seemed to have stabilized";
7. By 2000, however, defendant Gordy began to "exhibit more depressive symptoms" possibly caused by a tolerance to her medication, Zoloft;
8. In 2000 defendant Gordy's work and personal problems escalated and she "resumed psychotherapy" and began taking Effexor, which helped to stabilize her depression and anxiety;

9. By 2001 defendant Gordy's depression has stabilized, but she developed irritable bowel syndrome and anxiety was still a problem;

10. By 2003 defendant Gordy's depression and anxiety were "out of control" and the doctor recommended hospitalization;

11. Hospitalization "was not available to GORDY at this time" and she was sent to a "day" program instead;

12. At this program, defendant Gordy met with psychiatrist T. Andrews and participated in intensive psychotherapy with Janelle Whitegiver;

13. By July 2003 defendant Gordy's condition had "greatly improved";

14. By late 2004, defendant Gordy had a "severe break" in her mental illness, which resulted in the appearance of multiple personalities;

15. In December 2004 the dominant personality informed the doctor that "Donna had died and that DJ would 'clean up' the mess and then die as well";

16. Since December 2004 defendant Gordy's healthcare has been sporadic because "DJ did not want much help, nor would she accept it";

17. In December 2006 defendant Gordy experienced another "mental health crisis" with severe depression and suicidal thoughts, and she refused all referrals to mental health specialists;

18. By August 2007 defendant Gordy had experienced improvement with Cymbalta and she obtained a new part-time job;

19. However, defendant Gordy "was quickly overwhelmed by the stress and by November of 2007 Donna Jean, another new personality had appeared'"; and

20. The doctor's last appointment with defendant Gordy was in January 2008, at which time she refused any further treatment "as she did not 'see the point.'"

It is Dr. Sutcliffe's opinion that defendant Gordy's mental illness will "continue to worsen as she ages, especially if she refuses psychiatric care." Defendant Gordy does not provide declarations from either Dr. Andrews or Ms. Whitegiver. No medical records are provided in support of defendant Gordy's motion.

/ / /

/ / /

Plaintiffs object to the court's consideration of Dr. Sutcliffe's declaration, citing Federal Rules of Evidence 401 and 702, as well as Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and United States v. Morales, 108 F.23d 1031 (9th Cir. 1997) (en banc). Plaintiff raise three objections: (1) Dr. Sutcliffe is not qualified to offer any opinion as to plaintiff's mental health because she is not a mental health specialist; (2) Dr. Sutcliffe's declaration fails to describe any reliable methodology which formed the basis of her opinion; and (3) Dr. Sutcliffe's declaration will not assist the court because defendant Gordy's mental state is irrelevant to determination of her motion to set aside entry of default. Plaintiffs' objection is valid in that Dr. Sutcliffe is not a mental health specialist and, therefore, is not qualified to offer opinions as to defendant Gordy's mental health. As plaintiffs note: "Sutcliffe understood her limitations when she referred Defendant to a psychiatrist (D.T. Andrews) and a psychotherapist (Janelle Whitegiver). . . ." Dr. Sutcliffe also appears to have acknowledged her lack of expertise when she recommended hospitalization in 2003. At a minimum, the court would require the declaration of Dr. Andrews in order to assess defendant Gordy's mental condition. Dr. Sutcliffe's declaration, however, is relevant to the extent she recites a history of defendant Gordy's mental illness and treatment based on first-hand observation.

Turning to the issue of defendant Gordy's conduct leading to entry of default against her, it is clear that she had notice of the action, as established by the proof of personal service in October 2004. The question is whether she intentionally failed to respond to the complaint in an effort to hinder proceedings. In this regard, plaintiffs' citation to Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 690 (9th Cir. 1988), implies that the rule does not require some degree of bad faith on the part of the defaulting party. According to plaintiffs, culpable conduct is established upon notice of the action and an intentional failure to respond – for any reason. In TCI Group, the court stated:

> Our cases, however, have not used the term "intentional" in [the sense that intentional conduct cannot be excusable]. Instead, what we have meant is something more like, in the words of a recent Second

> Circuit Opinion addressing the same issue, "willful, deliberate, or evidence of bad faith." (citation omitted). Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not "intentional" under our default cases. . . .
>
> 244 F.3d at 697-98.

Thus, defendant Gordy must establish that her failure to answer was not in bad faith by offering a credible explanation showing good faith.

As indicated above, defendant Gordy argues that her mental illness excuses her failure to respond to the complaint. Again, TCI Group is instructive. In that case, which also involved a defaulting party claiming mental illness, the court concluded that the failure to respond was not intentional. The court stated:

> Applying our established understanding of the . . . culpability prong, we conclude that because of her exigent personal circumstances, especially her mental state, and because of her lack of familiarity with legal matters, Janet's failure to answer was not culpable. Janet had been widowed less than a year before Kathleen's action against her, and was distraught. She was in a psychiatrist's care for her severe depression, and was taking several strong psychoactive medications. For the twenty days during which she should have answered Kathleen's cross-claim, Janet was in the process of selling her home and moving herself and her two small children from California to Florida.
>
> Importantly, there is no suggestion that Janet deliberately tried to manipulate the legal system. Her diligence in seeking to set aside the default judgment reveals no disrespect for the courts. Rather, . . . this is a case where a party unfamiliar with the legal system defaulted at a time of extreme personal difficulty. . . . Under all the circumstances, we consider Janet's conduct to be excusable.
>
> 244 F.3d at 699.

Thus, contrary to plaintiffs' assertion, mental state can negate culpability.

In this case, defendant Gordy was personally served on October 14, 2004. According Dr. Sutcliffe, this is about the time ("late 2004") when defendant Gordy had a "severe break" and multiple personalities emerged. However, as discussed above, there is no evidence, either in the form of medical records or declarations from mental health professionals who were

providing treatment to defendant Gordy at the time, to establish that she was in fact suffering from multiple personality disorder in late 2004. Nor does Dr. Sutcliffe's declaration provide any more specificity as to when in "late 2004" defendant Gordy experiences her "severe break." If late 2004 means November or December, then her mental illness would not provide a reason to excuse her failure to respond to the complaint served in October. Moreover, according to Dr. Sutcliffe, defendant Gordy's condition had "greatly improved" by July 2003. However, there is no explanation or evidence to establish what occurred between July 2003 and late 2004 to account for the drastic shift from "greatly improved" to "severe break." In short, defendant has not met her burden of establishing that her conduct was not culpable. This stands in stark contract to the facts in TCI Group, where the defaulting party was under the contemporaneous care of a psychiatrist and her conduct leading to the default was explained in detail.

In addition, defendant Gordy has not established that she did not ignore this litigation for at least some period of time. According to Dr. Sutcliffe, defendant Gordy experienced another mental health crisis in December 2006, had improved by August 2007 with the use of Cymbalta, but became overwhelmed by November 2007. There is no explanation, however, as to defendant Gordy's mental state for the two years between late 2004 and December 2006. It is possible that she again experienced periods of improvement during this time period with therapy and/or medication and nonetheless failed to respond to plaintiffs' complaint. Likewise, defendant Gordy offers no explanation for why she did not respond to the action between August and November 2007. If she was well enough to seek and obtain part-time employment during this period, it follows that she would have been able to at least consult an attorney regarding plaintiffs' action against her. There is no indication that she did so or why she did not. Again, the facts of this case are quite unlike TCI Group, where the defaulting party's conduct is explained in detail sufficient to establish lack of culpability.

/ / /

/ / /

Finally, as discussed above, defendant Gordy has not presented any competent evidence to conclusively establish in the first place that she in fact suffered a severe mental illness such as would excuse her failure to respond. Again, the court notes that declarations from Dr. Andrews and Ms. Whitegiver could have been instructive. Plaintiff states that her mental illness has been documented since 1980, but she provides no documentation.

For all these reasons, defendant Gordy has not established that her culpable conduct did not lead to the default. In other words, she had not demonstrated good faith or at a minimum, presented a credible explanation inconsistent with bad faith. For this reason alone, her motion should be denied.

2. Meritorious Defense

As to the meritorious defense requirement, defendant Gordy has attached a proposed answer to her motion. The answer consists of various admissions and general denials as well as the following affirmative defenses: (1) failure to state a claim; (2) failure to exhaust administrative remedies; (3) contributory negligence; (4) failure to act reasonably in mitigation; (5) estoppel; (6) unclean hands; and (7) assumption of the risk. Defendant Gordy argues:

> GORDY has a meritorious defense to this action based upon the above facts because her severe mental illness prevented her from fully understanding that a lawsuit had been filed against her and that a response to the same was required to be made.
>
> GORDY further has a meritorious defense to the charges filed in the current suit because she did not participate in any type of wrongdoing, nor was there fraud in the inducement or fraud in the factum regarding the loans in question. Plaintiffs' [sic] entered into the low-interest loans with full knowledge of the terms contained therein. Plaintiffs' [sic] freely applied and accepted the federal loans at issue.
>
> Further, there is no harm to the Plaintiffs' [sic] as they received substantial federally subsidized government loans at a nominal interest rate. A simple comparison to market place interest rates demonstrates Plaintiffs' lack of injury, and therein, a defense to the action at hand.

As to her argument that her mental illness constitutes a defense, defendant Gordy has not presented competent evidence to establish the existence of a severe mental illness, let alone such an illness during the time relevant to the complaint (as opposed to the times relevant to the

default). Similarly, defendant Gordy has not offered any factual support for her other arguments (assuming that they would even apply in a Bivens action). Therefore, she fails to establish that she has a meritorious defense and, for this reason, her motion should be denied.

3. Prejudice to Plaintiffs

With respect to prejudice, plaintiffs state that they were prevented from obtaining key discovery from defendant Gordy in such a time as would have allowed them to propound further discovery on and/or pursue claims against others who are no longer parties to the action. According to plaintiffs:

> The only way the prejudice could be mitigated would be for Defendant Gordy to pay Plaintiffs' attorney fees, set aside the stipulations between Plaintiff[s] and the federal defendant (Doc. 153, 159, 160), set aside the resulting judgment (Doc. 155, 163, 164) reopen discovery for all parties, freely allow Plaintiff[s] to amend the Complaint with the identify of those who acquiesced to Gordy's retention, and allow service on those individuals to relate back to the date of initial filing of the complaint. Short of that, the prejudice could not be rectified.

Given that what plaintiffs propose is entirely unworkable, prejudice is established. Again, for this reason alone, defendant Gordy's motion should be denied.

**B. Defendant Gordy's Motion to Expunge Lis Pendens**

Defendant Gordy argues that a lis pendens placed on her real property should be expunged because plaintiffs did not properly plead any real property claim. Plaintiffs respond that they alleged at ¶¶ 42 through 55 of their complaint that defendant Gordy obtained financial gain through fraudulent and illegal conduct. They assert that, under California law, a real property claim sufficient to support a lis pendens is "a cause of action that . . . affects title to . . . specific real property." They conclude that, by placing the lis pendens on defendant Gordy's real property, they sought to prevent Gordy from transferring title to avoid judgment and that this constitutes an action to avoid fraudulent conveyance which "clearly affects title."

/ / /

/ / /

This machination, however, ignores the spirit of the California statute allowing for a lis pendens. As plaintiffs state, California law allows a lis pendens when the underlying action involves a claim relating to specific real property. The act of placing a lis pendens in and of itself, done after the complaint is filed, does not satisfy this requirement. Plaintiffs' allegations at ¶¶ 42 through 55 of their complaint that defendant Gordy obtained financial gain through fraudulent and illegal conduct does not relate to any specific real property. Therefore, the court finds that the lis pendens should not have been filed.

However, this finding does not end the analysis. Before the court can grant defendant Gordy's motion to expunge the lis pendens it must have subject matter jurisdiction to do so. As plaintiffs note in their briefing, expungement of a lis pendens is a state law remedy. Therefore, any jurisdiction to consider defendant Gordy's motion to expunge would necessarily arise under 28 U.S.C. § 1367 which defines the court's supplemental jurisdiction to hear state law claims. Such jurisdiction exists when there are cognizable federal claims which relate to the state claims. Because defendant Gordy's state law claim that the lis pendens should be expunged does not relate to any of plaintiffs' federal Bivens claims, this court lacks supplemental jurisdiction to consider defendant Gordy's claim. Her remedy lies in state court.

**III. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Gordy's motion to set aside entry of default (Doc. 183) is denied; and

2. Defendant Gordy's motion to expunge lis pendens (Doc. 185) is denied.

DATED: December 3, 2008

Craig M. Kellison

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE