# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDY ADAMS, et al.,

    Plaintiffs,

vs.

UNITED STATES OF AMERICA, et al.,

    Defendants.

No. CIV S-04-0979-RRB-CMK

FINDINGS AND RECOMMENDATIONS

Pending before the court are separate renewed motions[1] for default judgment (Docs. 187 and 188) filed by plaintiffs Ohm Ranch, Charles T. Ohm, Barbara A Ohm, John C. Ohm, and Susan L. Ohm ("Ohm plaintiffs"), Melvin Thompson and Mary Thompson ("Thompson plaintiffs"), and Douglas Hammond and Rhonda Hammond ("Hammond plaintiffs"), against defendant Donna Gordy ("Gordy"). These motions are before the undersigned pursuant to Eastern District of California Local Rule 72-302(c)(19).

/ / /

---

[1] Plaintiffs' previous motions for default judgment (Docs. 179 and 180) were denied without prejudice primarily based on lack of supporting information. (Doc. 181).

1

Plaintiffs' action proceeds on the amended complaint (Doc. 14) filed on September 3, 2004. Plaintiffs assert civil rights claims against defendant Gordy, who at the times relevant to this action was a Credit Manager at the Farm Service Agency ("FSA") of the United States Department of Agriculture, pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971). Plaintiffs' claims are based on an alleged pattern of fraud, misrepresentation, failure to act, failure to follow published regulations, and breach of fiduciary duty, all done in defendant's capacity as a federal employee. Defendant Gordy was personally served on October 14, 2004 (see Doc. 19). After defendant Gordy failed to respond to the amended complaint, plaintiffs requested entry of default by the Clerk of the Court on December 27, 2004 (Docs. 21 and 22). The Clerk of the Court entered defendant Gordy's default on the same day (Doc. 23). Almost four years later, Gordy filed a motion to be relieved from default (Doc. 183). Following hearing, the court concluded that Gordy had not established Rule 60(b) F.R.C.P grounds for relief and denied said motion (Doc. 198 ).

In the present case, the court has reviewed and considered the Amended Complaint (Doc. 14); plaintiffs' points and authorities in support of their motion (Docs. 187 and 188); the declarations of David C. Nicholson, James D. Van Ness, Kathryn York, Mary Thompson, Julie Sutterfield, John Ohm, Douglas Hammond, Brian Russell (Docs. 187 and 188) and the declaration of Nels Christiansen (Doc. 128) in support of FSA's Motion for Summary Judgment (Doc. 126) which sets forth the long and rather complex loan history of the plaintiffs with FSA.

## I. BACKGROUND

The FSA is authorized to make various kinds of loans, including farm loans, to farmers and rural residents. A primary purpose of FSA, and its predecessor FmHA, is to function as a "form of social welfare ... primarily designed to assist farmers ... [who] cannot obtain funds from private lenders on reasonable terms." <u>United States v. Kimbell Foods. Inc.</u>, 440 U.S. 715, 735

(1979).  FSA also exercises wide authority to compromise or adjust loans.  See Coleman v. Block, 562 F. Supp. 1353, 1364 (D.N.D. 1983).   7 U.S.C. § 1981a  provides authority for FSA to compromise, adjust, or reduce claims, to adjust and modify the terms of mortgages, to defer principal and interest and to forego foreclosure for such periods as the Secretary deems necessary.  See Cuny v. Block, 541 F. Supp. 506, 512 (S.D. Ga. 1982).

Each of the plaintiffs established a lending relationship with FSA as direct loan borrowers.  The term "borrower" is defined in each of the loan programs' section entitled definitions.  See 7 CFR § 1941.4 (1988) and 7 CFR § 1943.4 (1988).

In the landmark decision, Coleman v. Block, supra, the court enjoined the United States from foreclosing on farm program loans prior to giving personal notice of the borrower's rights to apply for deferral relief under § 1981a and the opportunity for a hearing.  The court characterized the agency's actions as involving more than borrowing on the part off farmers, and found that 7 U.S.C. §1981a imposed procedural duties on the United States, namely preventing the United States from  terminating a farmer's living and operating allowance, accelerating indebtedness and instituting foreclosure proceedings until borrowers were given prior notice of the reasons for the proposed action, an explanation of the eligibility for loan deferral options under § 1981a, and of their right to a hearing.  Coleman v. Block, 562 F. Supp. at 1367.

The Agricultural Credit Act allows FSA to use several loan servicing options to restructure or reduce debts of farmer program borrowers who were 180 days or more delinquent.  FSA could restructure a delinquent borrower's debt, including writing down debt, to an adjusted value of the collateral securing the debt (net recovery value).  Borrowers who were unable to develop a feasible plan of operations with restructuring could pay FSA the net recovery value buy-out amount and end their FSA debt obligation.

/ / /

/ / /

/ / /

1  The FSA in the present case was mandated to take specific precautions when plaintiffs
2  became 180 days delinquent on their debt. The first step was for FSA to provide a notice, via
3  certified mail, of the availability of loan servicing options. See 7 CFR § 1951.907(c) (1988)12;
4  Moseanko v. Yeutter, 944 F.2d 418,423-24 (8th Cir.1991); Coleman v. Lyng, 864 F.2d 604,608-
5  09 (8th Cir.1988), cert. denied, 493 U.S. 953 (1989).
6  This initial notice became know as the "1951-S loan servicing package." Chamblee v.
7  Espy. 100 F.3d 15, 16 (4th Cir. 1996).  Following receipt of this notice, plaintiffs would then
8  have had 60 days to return the completed package of forms and supporting data to FSA. See
9  7 CFR § 1951.907 (e) (1988).  From the date the completed package was returned, FSA would
10 then have 90 days to complete their review, and thereafter inform plaintiffs of the results.  FSA
11 had absolute control of the 1951-S servicing process.
12 Absent the initial 1951-S loan servicing package being sent by FSA, the plaintiffs herein
13 were prevented from initiating the loan servicing process.  During the loan restructuring process,
14 FSA also prepares a computer printout depicting each borrower's history which is then used to
15 process his or her 1951-S package to determine loan servicing alternatives.  In the present case,
16 none of the plaintiffs received this information from Gordy.
17 If a borrower's farming operation indicated that, with restructuring  and/or debt write-
18 down, a positive financial margin resulted, than said servicing would then be offered to the
19 borrower. See 7 CFR § 1951.907 (d) (1988).  When a loan is restructured (consolidated or
20 reamortized), the borrower would then be provided the choice between the original loan interest
21 rate or the rate in existence at the time of the restructure, whichever is lower. See 7 CFR
22 § 1951.909 (e)(I)(xii) (1988).
23 Key to that lender borrower relationship was the County Supervisor.  At all relevant
24 times, Defendant Gordy was the FSA County Supervisor with respect to plaintiffs' loans.  The
25 County Supervisor is the highest level employee of the FSA in that County and charged with the
26 responsibility of carrying out all FSA programs.

Plaintiffs' Bivens allegations against Gordy in her official capacity include that she: (1) failed to perform the duties mandated by and incumbent upon her position as the FSA County Supervisor; (2) knowingly made false representations regarding her actions and conduct; and (3) concealed her improper actions, by removing documents from Plaintiffs' loan portfolios.

Subsequent to Gordy's termination from the FSA, each of the plaintiffs were notified by FSA of loan servicing and thereafter successfully availed themselves to the 1951-S servicing options. The Hammonds' loans were restructured on August 19, 2004; the Thompsons on June 23, 2004; the Ohms filed the completed application on July 26, 2005, and deferred restructuring pending settlement of this case with counterclaimant FSA, which occurred November 5, 2007 (Doc. 153).

In the present case, none of the plaintiffs were provided the required notification of loan servicing by Defendant Gordy. Had notification been properly given, plaintiffs contend that they would then have had 60 days to return the completed package of forms and supporting data to FSA, and FSA would then have had 90 days to complete its review, and thereafter inform plaintiffs of the results. But for Gordys failure to provide notice, each of the plaintiffs would have been able to apply for loan servicing. Said servicing would have including rewriting their loans to take advantage of debt forgiveness and/or lower interest rates.

FSA offered a number of type of loans, three of which are common to each of the plaintiffs, herein. These categories of loans are farm ownership, operating and emergency.

The purpose of the Farm Ownership ("FO") loan program (fund code 41) is to acquire or enlarge a farm or ranch. 7CFR § 1943.66 (2007). The basic objective of the FO loan program is to provide credit and management assistance to eligible farmers and ranchers to become owners-operators of family-sized farms or to continue such operations when credit is not available elsewhere, and to enable family-farm operators to use their land, labor and other resources, and to improve their living and financial conditions so that they can obtain credit elsewhere. See 7 CFR § 1943.2 (2007).

1   The purpose of the Operating Loan ("OL") loan program (fund code 44) is to acquire livestock and equipment, provide for annual farm operating and family living expenses, and refinancing debts. 7 CFR § 1941. 16 (2007).  The basic objective of the OL loan program is to provide credit and management assistance to farmers and ranchers to become operators of family-sized farms or continue such operations when credit is not available elsewhere. 7 CFR § 1941.2 (2007).

There are two types of Emergency Loans ("EL") – natural disaster (fund code 43) and economic emergency (fund code 29).  The purpose of the EM Loan program is to provide emergency financial assistance to borrowers.

## II. STANDARDS FOR DEFAULT JUDGMENT

Whether to grant or deny default judgment is within the discretion of the court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising this discretion, the court considers the following factors: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits when reasonably possible.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 impossible, where defendants refuse to defend. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Where a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. See Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam); Danning v. Lavine, 572 F.2d 1386 (9th Cir. 1978); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam); see also Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001).  Therefore, when determining liability, a defendant's default functions as

an admission of the plaintiff's well-pleaded allegations of fact. See Panning v. Lavine, 572 F.2d 1386 (9th Cir. 1978). However, the court has the responsibility of determining whether the facts alleged in the complaint state a claim which can support the judgment. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). For this reason, the district court does not abuse its discretion in denying default judgment where the factual allegations as to liability lack merit. See Aldabe, 616 F.2d at 1092-93.

### III. DISCUSSION

Plaintiffs, Douglas L. Hammond and Rhonda L. Hammond, had six loans with FSA, one was a farm ownership loan, fund code/loan number 41-09; and two were operating loans fund code/loan numbers 44-08,44-12; and three were actual loss emergency loans, fund code/loan numbers 43-05,43-06,43-07. The balances and interest accrual are set forth in Exhibit 1 to the Declaration of Brian Russell (Doc. 187.12) and loans are detailed in the Declaration of Nels Christiansen (Doc. 146) in Support of FSA's Motion for Summary Judgment. The Hammonds were damaged due to Gordy's misfeasance, nonfeasance and malfeasance when she did not comply with FSA published regulations by failing to initiate loan servicing. The Hammonds' loans fell delinquent on December 31, 1999. The notice of loan servicing should have been sent out by July I, 2000, which would have resulted in a completed restructure within five months, no later than December 1, 2000. The time line is clearly set forth in 7 CFR § 1951.907(c) (1988). Instead of dealing with the existing loans, Gordy made new loans. By ignoring the interest accrual on the delinquent loans, Gordy deprived the Hammonds of the ability to have the accrued interest written off and then reset at lower rates. Damages to the Hammonds resulting from Gordy's failure to timely restructure their loans amount to $143,701.65, which represents accrued interest that should not have been incurred and the difference between the original loan interest rate and the rate in existence at the time of the restructure. See 7 CFR § 1951.909 (e)(I)(xii) (1988).

Plaintiff, Ohm Ranch, had two loans with FSA, both actual loss emergency loans, fund code/loan numbers 43-01 and 43-02. Charles T. Ohm and Barbara A. Ohm, had three loans with FSA, two economic emergency loans, fund code/loan numbers 29-99 and 29-03; and one operating loan, fund code/loan number 44-02. Plaintiffs, John C. Ohm and Susan L. Ohm, had four loans with FSA: an actual loss emergency loan, fund code/loan number 43-16; two operating loans, fund code/loan numbers 44-18 and 44-19; and a farm ownership loan 41-20. Of the Ohm plaintiffs, Charles and Barbara Ohm were the initial FSA borrowers. During the economic downturn of the early 1980's, John and Sue Ohm (John is Charles' son) purchased a portion of Charles and Barbara's real property. Charles and Barbara Ohm, and John and Sue Ohm formed the partnership Ohm Ranch. It was formed as an eligible entity, separate and apart from their individual farm operations. As with the Hammonds, the Ohms were damaged by Gordy's misfeasance, nonfeasance and malfeasance when she did not comply with FSA published regulations by failing to initiate loan servicing. Instead of dealing with the existing loans, Gordy made new loans. By ignoring the interest accrual on the delinquent loans, Gordy deprived the Ohms of the ability to have the accrued interest written off and then reset at lower rates. Damages to the Olms resulting from Gordy's failure to timely restructure their loans amount to $223,132.28, which includes accrued interest that should not have been incurred and the sum representing the difference between the original loan interest rate and the rate in existence at the time of the restructure. See 7 CFR § 1951.909 (e)(I)(xii) (1988); see also, Declaration of Julie Sutterfield. (Doc. 187.9)

Plaintiffs, Melvin A. Thompson and Mary A. Thompson had fourteen loans with FSA: eight were operating loans, fund code/loan numbers 44-01,44-02,44-05,44-06,44-07,44-14 08,44-11,44-15; four farm ownership loans, fund code/loan numbers 41-03,41-04,41-12,41-13; and two actual loss emergency loans, fund code/loan numbers 43-09,43-14. Although Gordy apparently made numerous improper loans to the Thompsons over an extended period of time, defining Thompsons' damages is problematic. In reviewing the declarations of Katherine York (Doc.

187.7), and Mary Thompson (Doc. 187.8), the court is simply left without sufficient information to properly assess damages. As stated above, while factual allegations concerning liability are deemed admitted upon a defendant's default, the court does not presume that any factual allegations relating to the amount of damages suffered are true. See Geddes, 559 F.2d at 560. The court must ensure that the amount of damages awarded is reasonable and demonstrated by the evidence. See id. In discharging its responsibilities, the court may conduct such hearings and make such orders as it deems necessary. See Fed. R. Civ. P. 55(b)(2). In assessing damages, the court must review the facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled. See Pope v. United States, 323 U.S. 1 (1944). Here, very little of the supporting information referenced by plaintiffs' counsel assists the court as to Thompsons' alleged damages. (Docs. 14, 128, 187.7 and 187.8). This is troublesome to the court since plaintiffs' counsel has been admonished in earlier filings of these deficiencies. (Docs. 176 and 181). Since the court is unable at this time to properly assess damages due the Thompsons from Gordy, it is also unable to pass on Thompsons' FSA attorneys fees for the same reasons set forth above, with respect to Olms and Hammonds loans.

      Defendant FSA ultimately filed counterclaims against all plaintiffs resulting in successful stipulated judgments including unpaid principal and interest, prejudgment interest, and attorneys fees, which were entered on November 7, 2007 (Doc. 153), December 10, 2007 (Doc. 159) and December 11, 2007 (Doc. 160). FSA was awarded attorneys fees from plaintiffs Olms in the sum of $236,139.12 (Doc. 187.6 and 153) and $70,570.95 from Hammonds. (Doc. 187.6 and 159). In addition to damages relating to the difference in interest charges, plaintiffs also request the sum of $ 136,097.08 as damages which apparently represents a portion of the attorneys fees awarded to FSA in the stipulated judgments. (Doc. 153, 159 and 160). In comparing this requested sum with the total amount of attorneys fees awarded to FSA from plaintiffs Olms, Hammonds and Thompsons ($349,000) (Docs. 153, 159 and 160), the court is unable to make sense of the amount requested herein. Certainly, Gordy should not be responsible for plaintiffs'

total FSA attorneys' fee obligation, but plaintiffs offer no explanation or formula to what would be reasonable under the facts set forth. Quantifying this amount becomes even more difficult, since Thompsons' stipulated attorneys' fees are not subject to consideration at this time.

Both the Hammonds and Olms stipulated FSA judgments also contain provisions allowing for the reduction of awarded attorneys fees in the event that these plaintiffs successfully complete their respective loan workouts. (Docs. 153.38 and 159.22). The court is not informed of the success, if any, of these workouts.

For these reasons, it is not possible to compute what portion of plaintiffs FSA attorneys fees should be attributable to Gordy's acts or omissions. This court recommends denial of the stipulated FSA fees as damages.

Plaintiffs also seek an award of prejudgment interest and attorneys fees incurred in the present action. As with plaintiffs previous motion for default judgment, the point and authorities and supporting declarations are woefully inadequate to support such awards.

With respect to prejudgment interest, plaintiffs note that "[P]rejudgment Interest is calculated at the IRS underpayment rate (Internal Revenue Code Section 15 6621), (IR-2008-76, June 2, 2008) is 5%, for the period from December 27, 2004 through" the date of judgment. (Doc. 187.3 [page 22]). Reference to these provisions appears inapposite, however, since 28 U.S.C. § 1961 appears to govern interest rates on civil money judgments, when applicable.

Similarly, plaintiffs provide no authority for the award of prejudgment interest under the circumstances of this case. Since neither 42 U.S.C. § 1983, nor 42 U.S.C. § 1988 mention the award of prejudgment interest, and there is no general federal statute governing the award of prejudgment interest, this court has little motivation to research such authority, in light of plaintiffs' failure to properly brief this issue. The court cannot determine whether prejudgment interest can or should be awarded, and if so, at the appropriate rate under 28 U.S.C. § 1961. For these reasons, the court recommends denial of prejudgment interest without further briefing from plaintiffs.

As a final request, plaintiffs' counsel seeks an award of attorneys fees for his work in representing plaintiffs in the present action.  Again, he provides no authority for such requests.  Similarly, he does not provide any billing records and claims that to do so would create undue hardship and allow for the release of work product material.   The court is not persuaded that providing accurate billing records supporting work performed in this action amounts to an insurmountable hurdle.  As discussed below, such information can and should be provided for in an appropriate post-judgment motion.

The Civil Rights Attorney's Fees Awards Act of 1976, as codified at 42 U.S.C. § 1988 , permits the district court, in its discretion, to award attorneys' fees to a "prevailing party" as part of the costs of the suit in actions brought pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, or 1986. See Hutto v. Finney, 437 U.S. 678  (1978) Curry v. Block, supra at 1410.

Although, plaintiffs may be entitled to an award of attorneys fees upon providing sufficient information to the court, such a request and information is anticipated to be made following entry of judgment.  28 U.S.C. § 2410.  Curry v. Block, at 1412-13.

For the reasons, above mentioned, the court recommends denial of attorneys fees without prejudice, subject to plaintiffs' motion under 28 U.S.C. § 2412(d)(1).

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. The Ohm plaintiffs' amended motion for default judgment (Doc. 187) be granted in part, and they be awarded the sum of  $223,132.28, as compensable damages representing the accrued interest that would have been written off and the reset at lower rates if statutory loan servicing had been performed by Gordy.  Plaintiffs Olms' request for reimbursement of the FSA stipulated attorneys fees; prejudgment interest and attorneys' fees be denied, without prejudice;

2. The Thompson plaintiffs' amended motion for default judgment (Doc. 187) be denied without prejudice; and

3. The Hammond plaintiffs' amended motion for default judgment (Doc. 187) be granted in part, and that they be awarded the sum of $143,701.65, as compensable damages representing the accrued interest that would have been written off and the reset at lower rates if statutory loan servicing had been performed by Gordy. Plaintiffs Hammonds' request for reimbursement of the FSA stipulated attorneys fees, prejudgment interest and attorneys' fees be denied, without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 17, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE